Birchard, C. J.
The first question which presents itself in considering this case is the authority of Payne Cleveland to contract in behalf of Moses Cleveland. A certified copy of an instrument is produced from the recorder’s office, in the county of Trumbull, which is, in form, a full and ample power of attorney, authorizing Payne Cleveland to “ bargain, sell, and convey” the lands in controversy, together with certain other lands lying in Trumbull county. This instrument purports to have been signed by Moses Cleveland, is without a seal or subscribing witness, and was acknowledged under date of May 7, 1804, before Cavin Goddard, a justice of the peace and notary public, at Windham county, in the State of Connecticut. It was recorded December 11, 1805. It is supposed that no law of this state required the recording of a power of attorney to convey lands prior to 1818, and that this certified copy can not be received as clothed with any official sanction belonging to duly recorded instruments, properly executed, and by law required to be placed on record. We have already, at this term, decided, and it had before been repeatedly held, that an imperfectly executed instrument, or one not required to be recorded, derived no efficacy from being placed on record.
Without being referred to a statute authorizing the record of this instrument, and in the absence of authority showing that a power executed as this was, would be valid, even by the laws of *420 Connecticut (although it is believed that without a seal it would be well executed under the laws of Connecticut for the conveyance of lands within the state), we must reject the certified copy; as evidence to. prove the existence *and contents of the original. Can it be received as a copy, or as an item of evidence to show the contents of the original, in connection with the other proof of facts and circumstances connected with this case? We think it may be so received. It is found in the records of a public office, made over forty years since. Those living at its date, and who could have testified concerning the original, have departed from the scene of action. It was acted upon more than forty years ago, and (or many years after its date, and treated as a genuine instrument by those who were interested in knowing whether it was a valid power. Whether it was genuine, contracts and conveyances were made in virtue of it, and the aid of courts invoked and granted to perfect such conveyances. Possession of lands was surrendered, and taken and occupied till time has cured all defects in the conveyances so made. Under this state of (acts it may be presumed, and we are satisfied that the presumption is the truth, that there was an original, of which this is an exact copy. As to the lands in the Salt Spring tract in Trumbull, the execution of the original would be presumed to sustain the long possessions of Heaton. And to establish the genuineness of the lost instrument in one instance, is sufficient to authorize the reception of a copy.
The next inquiry is, what rights were acquired by the acts of Payne Cleveland done under this power? In his contract with Johnson he describes himself as “Payne Cleveland, attorney in fact for Moses Cleveland.” In all other respects the article of agreement is the same as if he wore contracting in his own name and on his own behalf. The covenants are his personal covenants—the real estate is his. The lots received in McKeesport, as part of the consideration, appear to have been conveyed to him, and yet, in 1810, we find the administrator, Moses Cleveland, accounting with him, receiving the proceeds of the sale, and renting and controlling the McKeesport property, as the property of Moses Cleveland’s estate. What the real facts were, how the accounts were settled, and what the agreements were originally between *Payne and Moses Cleveland’s administrator, can only be gathered from the memoranda of transactions which took *421 place more than thirty years since. Age has so impaired the only survivor, Judge Kirtland, that when his deposition was sought, his once active mind had become a blank, and he could give no account of anything in which ho was formerly concerned. Still, the slate of the title, the force of the expression “attorney in fact for Moses,’’ the possession and control of the lot in McKeesport, received in exchange, the acts of the administrator in seokingthe authority of the court in Trumbull to complete the contract by a conveyance on behalf of the estate of Moses Cleveland, although of no validity as a judicial proceeding, speak a language that can not be misunderstood, showing that the true intention was to act in the capacity of attorney under the authority of the power above referred to. It matters little wbat was the lorm of the contract, when the intention of tho parties is palpable, and a full consideration has boon paid and received. It would be a reproach to a court of equity could it be said that in such a case mero form must work a denial of justice. Whatever it might be at law, this contract with Johnston was in equity the contract of Moses, not Payne Cleveland, and for the simple reason that both intended that it should be so. That was what they designed, and tho accidental circumstance of affixing a seal to the signature of Payne, will not be allowed in this court to make it otherwise. We look to a result that will be consistent with the ends of justice, and where tho way to maintain it is so manifest, shall not be turned out of it, unless tho well-settled rules of law present insuperable obstacles. No well-settled rule or well-considered adjudication will be contravened by rejecting tho seal and reforming this contract, so as to make it effect the objects of the contracting parties. The omission to sign as the attorney of Moses and affixing a seal were accidental circumstances, which originated in unskillfulnoss, ignorance, or mistake, and ought not to defeat an agreement which all parties for many years treated as obligatory, which on one part was fully executed, *and upon the other was for thirty years without disaffirmance.
• Again, it is said that the power was departed from by receiving a part of the consideration in lands. Numerous authorities have been cited to establish th doctrine that a naked power to sell, authorizes only a sale lor money. The facts of this case do not require at our hands a critical examination into the technical distinctions of the law upon this branch of the case. Without ad- *422 milting or denying the legal proposition, we leave it to be settled in some case that may require the expression of an opinion on the point. The evidence of George Parsons and other's, shows that in some cases it was customary for land agents to receive other considerations than money in payment for land sold, and as already stated, it is shown that long since the consideration of this land went to the benefit of the 'estate. In the view we have taken it may well be assumed, that by parol Payne Cleveland was authorized to contract in this way by his brother, and that the acts of the representative of the estate, both those in Connecticut and Ohio, are in equity a sufficient ratification. It can not be doubted that they had full knowledge of all the circumstances of the sale. Kirtland’s attempt to make a deed, shows that he was aware of the 'fact. The nature of his settlements with Payne, and his dealings with tho Connecticut administrators, prove that they were not ignorant upon the subject. It would be reasoning against probabilities to suppose that the mother of these respondents would have acquiesced in the acts of her brother-in-law Payne, to the prejudice of her infant children, if she had not known that her husband, their father, had given to his brother permission to act as we find him acting. .
Another point made in the case is to b.e considered. The premises described in the bill are section No. 19, and fraction No. 19, in township No. 6, of range No. 12, of the Ohio Company’s purchase, Athens county.
In the contract, the description is “a certain tract of land situate, lying, and being in the county of--and State of *Ohio, as laid out in township 6, range 12, No. 19, containing 640 acres, and all of a practical part of a survey adjoining the same, containing 260 acres.”
It is urged that this description is so uncertain and vague, that it is void. We do not think this position can be sound. Payne Cleveland was evidently endeavoring to dispose of his brother’s land in the Ohio Company’s purchase. Moses Cleveland had but one section 19, and one fraction 19, which adjoined it in township 6, range 12. • Both these tracts lay in Athens county, and constituted one of the two shares owned by him in the Ohio Company's purchase. It is quite certain that the lands described in the bill are the same that the contract embraces, or that the parties intended to embrace.
*423 The remaining objection necessary to be considered, touches the frame of the bill; for in the view we have taken of the ease, it is wholly unnecessary to consider the tax title of the plaintiffs, or any other question which has been presented by counsel.
The bill, after stating the ease and bringing before the court the proper parties, prays for a decree against all the defendants, compelling them to release to complainants all their claims and rights at law, in the land described, or to execute a conveyance, and also a decree to quiet the title of complainants, and that they majr have such other relief as pertains to equity. ¥e can discover no difficulty in.the way of a proper decree. There is no need of an express prayer to reform the contract of Payne, so as to make it road in the name of Moses Cleveland ; a prayer for its execution, or for such relief as pertains to equity, is sufficient. A conveyance according to the intention of the parties is the great object of the bill, and it would be mere circuity to decree: 1. A proper execution of the power of attorney. 2. A reforming of the contract, and finally, a conveyance. It is bettor to seek, as this bill does, a direct conveyance, and the decree may be so prepared, with a perpetual injunction against further proceedings at law by the respondents, to disturb the complainant’s possession, and a decree for costs.